UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ESEN DUKANCI, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 14-11282-DJC |
| ANN INC. RETAIL, | ) ) ) | |
| Defendant. | ) ) ) ) | |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                    **August 3, 2015**

**I.      Introduction**

Plaintiff Esen Dukanci ("Dukanci") has filed this lawsuit against Defendant Ann Taylor Retail Inc.[1] ("Ann Taylor") alleging a claim of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).  D. 1.  Ann Taylor has moved for summary judgment.  D. 54.  For the reasons stated below, the Court ALLOWS the motion.

**II.     Standard of Review**

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir.

---

[1] The complaint incorrectly named the Defendant as "Ann Inc. Retail."  D. 7 at 1 n.1.

1996)). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (quoting Anderson, 477 U.S. at 249) (alteration in original). Here, then, Dukanci "must point to evidence in the record that would permit a rational factfinder to conclude that the employment action was retaliatory." Thompson v. Coca-Cola Co., 522 F.3d 168, 181 (1st Cir. 2008). In determining whether to grant summary judgment, the Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

### III. Factual Background

Unless otherwise indicated, the following facts are as described in Ann Taylor's statement of material facts, D. 56.[2]

Dukanci is Muslim, was born in Turkey and is a United States citizen. Id. ¶ 6. Dukanci worked for Ann Taylor for approximately five years from January 2007 until June 2012. Id. ¶¶

---

[2] The Court notes that Dukanci seems to have responded to Ann Taylor's motion for summary judgment with a statement of material facts in her opposition to the motion, D. 58 at 4-14, but the proffered statements fail to comply with Local Rule 56.1 as they do not state which of defendant's facts are in dispute, are not properly supported by the record and consist largely of legal argument. Nevertheless, the Court has considered Dukanci's statement of facts and has addressed it in this Memorandum and Order to the extent that Dukanci relies upon it to argue that there is a disputed issue of material fact that precludes summary judgment to Ann Taylor.

7, 13. She began her employment with Ann Taylor as a senior assistant manager and co-manager of the Ann Taylor LOFT store located in Chestnut Hill, Massachusetts, but was promoted to store manager in or around May 2009. Id. ¶¶ 8-9, 13. Prior to her termination on June 18, 2012, Dukanci was still employed as a store manager at the Chestnut Hill LOFT store. Id. ¶¶ 9, 13. As store manager, Dukanci was supervised by and reported directly to the district manager. Id. ¶ 12. Initially, Dukanci reported to District Manager Kellie Orcione ("Orcione"), but when Orcione left the company a few months later Dukanci began reporting to District Manger Michelle Desrosiers ("Desrosiers"). Id. Dukanci subsequently reported to District Manager Jeanne Anderson ("Anderson") after Desrosiers left in 2011. Id. Over the course of Dukanci's employment as store manager, Desrosiers and Anderson periodically reviewed Dukanci's performance and provided her with evaluations that identified consistent, specific areas of concern. Id. ¶¶ 14-15, 22-23, 32, 43-45.

### A. Dukanci's Performance Issues Pre-MCAD Complaint

As noted above, Dukanci began her employment with Ann Taylor in January 2007 and was promoted to the position of store manager in May 2009. Id. ¶¶ 8-9. On March 25, 2010, Dukanci received her first annual performance assessment, which evaluated her 2009 performance as store manager. Id. ¶ 14. The assessment noted an overall performance rating of "below expectations" and placed Dukanci on notice that she must "improve her operational and directional leadership as well as her performance management skills immediately." Id. ¶¶ 15, 18. "[I]f immediate and sustained improvement of [Dukanci's] leadership is not evident[,] disciplinary action [would] follow." Id. ¶ 18. Dukanci acknowledges receiving the assessment and its contents. Id. ¶¶ 16, 17; Dukanci Depo., D. 56-1 at 18-22. In addition to the performance

assessment, Dukanci received a final warning in December 2010 for losing her store keys.  D. 56 ¶ 21; see also Dukanci Depo., D. 56-1 at 26-27.

On April 13, 2011, Dukanci received her second annual performance assessment, which evaluated her 2010 performance as store manager.  D. 56 ¶ 22.  Dukanci again received an overall performance rating of "below expectations" and Desrosiers, her evaluator, highlighted that Dukanci "continued to: (i) have a difficult time receiving constructive feedback; (ii) have a difficult time making decisions; (iii) fail to manage her co-manager's performance; (iv) fail to impact associate engagement or deliver effective written performance assessments; (v) fail to develop a talent pool for potential store leadership; (vi) fail operational assessments; (vii) fail to maintain the general maintenance of the Store; and (viii) use poor judgment."  Id. ¶ 23.  Dukanci acknowledges receiving the assessment and further acknowledges that she had been warned by Desrosiers that this was the second year in a row that Dukanci had failed to make improvements and "[i]f significant and sustained improvement of her leadership is not evident, further disciplinary action will follow up to and including the separation of her employment with LOFT."  Id. ¶ 24; Dukanci Depo., D. 56-1 at 28-30.

On April 27, 2011, Dukanci sent an email to Human Resource Director Colleen Foote ("Foote") regarding the 2009 and 2010 performance assessments.  D. 56 ¶ 26.  In the email, Dukanci disagreed with both assessments, but did not express a belief that the negative evaluations therein came about as a result of her religion and/or national origin.  Id. ¶ 28. Dukanci testified in her deposition, however, that she subsequently telephoned Foote, after receiving the 2010 performance assessment, to voice concerns about her belief that she was being discriminated against because of her religion.  Id. ¶ 27; Dukanci Depo., D. 56-1 at 23-24.

In May 2011, an employee at Dukanci's store placed an anonymous call to C.A.R.E. (Concerned Associates Responsible for Ethics), a hotline maintained by Ann Taylor to which employees can submit complaints relating to the workplace environment. D. 56 ¶¶ 29, 30. The anonymous caller expressed concern about the actions taken by Dukanci after another employee was injured in the store. Id. ¶ 30. The caller reported that Dukanci showed "a lack of care" for the injured employee by not providing the employee with medical treatment in a timely manner. Id. Dukanci acknowledges that the employee was injured in the store and further acknowledges that the hotline complaint had been submitted before she filed her March 2012 MCAD complaint. Id. ¶ 31; Dukanci Depo., D. 56-1 at 64-67.

In August 2011, Desrosiers issued Dukanci a mid-year performance assessment. D. 56 ¶ 32. In the assessment, Dukanci again received an overall performance rating of "below expectations." Id. The assessment noted that Dukanci "continues to deliver below expectations leadership performance," warning that "[a] lack of immediate, sustained improvement in [Dukanci's] performance will result in her separation from the company." Id. ¶ 33. Dukanci acknowledges that she received the mid-year performance assessment. Id. ¶ 34; Dukanci Depo., D. 56-1 at 33-35.

In late 2011, Desrosiers left Ann Taylor and was replaced by Anderson. D. 56 ¶ 36. According to Dukanci, Anderson "was very happy with [Dukanci's] performance up until [Anderson] found out that [Dukanci] was Muslim." Id. ¶ 37. In February 2012, another employee in Dukanci's store, Sales Lead Carey Dever ("Dever"), submitted a hotline complaint against Dukanci alleging that Dukanci "harassed her and retaliated against her regarding vacation time." Id. ¶¶ 38-39. Dever also complained about Dukanci's angry demeanor towards another store employee. Id. ¶ 39. Dever subsequently contacted Anderson, informing her that she would

be resigning because of Dukanci's conduct. Id. ¶ 40. In an effort to resolve the situation, Anderson suggested that Dever speak to Dukanci, but Dever claims Dukanci refused to speak with her before leaving the store. Id. In addition to Dever, two other employees resigned from Dukanci's store in February. Id. ¶ 41. In her resignation letter, Dever explained that she "felt uncomfortable around [Dukanci]," but that she "regret[ted] that th[e] situation ha[d] gotten so bad." D. 57-2 at 2.

On February 15, 2012, Dukanci received her third annual performance assessment, which evaluated her 2011 performance as store manager. D. 56 ¶ 43. Unlike the two previous annual assessments, Dukanci received an overall performance rating of "meets expectations," but again received a "does not meet expectations" and "below expectations" for her strategic objectives. Id. ¶ 44. The assessment also informed Dukanci that her leadership and communication skills needed improvement. Id. Beginning in March 2012, Anderson met with Dukanci almost weekly to address Dukanci's performance. Id. ¶ 45. Anderson informed Dukanci of specific performance issues, including Dukanci's lack of leadership and that Dukanci's team felt as though she "did not inspire, show up with intent, or listen to them." Id. ¶ 46. In each assessment, Anderson also informed Dukanci that her failure to show improvement within thirty days could result in her termination. Id. ¶ 47.

   **B.**   **Dukanci's MCAD Discrimination Complaint**

On March 5, 2012, Dukanci filed a complaint with the MCAD alleging that Ann Taylor had discriminated against her on the basis of her religion and national origin/creed. Id. ¶¶ 49-50. Ann Taylor received a copy of the complaint on March 16, 2012. Id. ¶ 51. The MCAD dismissed the complaint on July 27, 2013, finding a lack of probable cause and stating that "the

Commission [was] unable to conclude that the information obtained establishes a violation of the statutes." Id. ¶ 51 n. 2.

On May 23, 2012, Anderson issued Dukanci a mid-year performance assessment, noting that: (1) Dukanci failed to attend numerous store manager meetings; (2) failed to communicate important information to Anderson, including an instance of opening the store much later than the traditional time; and (3) failed to fill open sales lead positions. Id. ¶¶ 56-58. Following the issuance of the mid-year assessment, Anderson continued to meet with Dukanci regarding her ongoing performance problems. Id. ¶¶ 59-60. On June 18, 2012, Ann Taylor terminated Dukanci's employment. Id. ¶ 62. On June 21, 2012, Dukanci filed a second complaint against Ann Taylor with the MCAD, which was dismissed for lack of probable cause on July 23, 2013. Id. ¶¶ 63-64.

## IV.    Procedural History

Dukanci instituted this action on March 21, 2014. D. 1. On May 8, 2015, Ann Taylor moved for summary judgment. D. 54. Ann Taylor simultaneously moved to strike Dukanci's expert report and to preclude the testimony of Dukanci's expert, Dr. Roger K. Pitman. D. 52. Subsequently, Ann Taylor moved to strike Dukanci's reply to Ann Taylor's motion to strike expert report. D. 63-1.[3] The Court heard the parties on the pending motions on July 16, 2015 and took these matters under advisement. D. 65.

## V.    Discussion

### A.    Dukanci Has Not Demonstrated a Genuine Issue of Material Fact as to Her Retaliation Claim

---

[3] Ann Taylor's motion for leave to file the motion to strike, D. 63, is ALLOWED *nunc pro tunc*.

7

Dukanci asserts a retaliation claim against Ann Taylor under Title VII. D. 1 at ¶¶ 4-5. Title VII's anti-retaliation provision makes it unlawful for an employer to take adverse employment action against an employee because the employee engaged in protected activity. See 42 U.S.C. § 2000e-3(a). To evaluate a retaliation claim under Title VII, the Court applies the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, Dukanci has the initial burden of setting forth a *prima facie* case of retaliation. Id. at 802. If Dukanci establishes a *prima facie* case, the burden then shifts to Ann Taylor "to proffer a legitimate, non-retaliatory reason for [its] employment decisions." Alvarado v. Donahoe, 687 F.3d 453, 458 (1st Cir. 2012) (citation and internal quotation marks omitted). If Ann Taylor can provide a legitimate reason, the burden then shifts back to Dukanci to demonstrate that Ann Taylor's reason is "pretextual and proffered to disguise retaliatory animus." Id. (citation omitted).

To demonstrate a *prima facie* case of retaliation, Dukanci must show that: (1) she engaged in a protected activity; (2) she was thereafter subjected to some materially adverse action; and (3) a causal connection existed between the protected conduct and the adverse action. Rivera-Colón v. Mills, 635 F.3d 9, 12 (1st Cir. 2011). "Protected activity" includes action taken by the plaintiff "to protest or oppose statutorily prohibited discrimination." Fantini v. Salem State College, 557 F.3d 22, 32 (1st Cir. 2009) (citation omitted). Under Title VII, "adverse action" refers to an act "that could well dissuade a reasonable worker from making or supporting a charge of discrimination." Dixon v. Int'l Bhd. of Police Officers, 504 F.3d 73, 81 (1st Cir. 2009) (citation omitted). "Causal connection" requires that the plaintiff's "protected activity was a but-for cause of the alleged adverse action by the employer." Univ. Of Tex. Sw. Med. Ctr. v. Nassar, ___ U.S. ___, 133 S. Ct. 2517, 2533-34 (2013) (adopting a "but-for" standard in place of

8

the less stringent motivating-factor standard, which would require only a showing that retaliation was a motivating factor for the adverse employment action); see Ponte v. Steelcase Inc., 741 F.3d 310, 321 (1st Cir. 2014) (applying Nassar but-for causation standard).

### 1. Dukanci has Failed to Establish a Causal Link between her MCAD Grievance and her Termination

Ann Taylor does not dispute that Dukanci engaged in protected conduct (i.e., the filing of the March 2012 MCAD complaint) and that she suffered an adverse employment action (i.e., her June 2012 termination from Ann Taylor). See, e.g., D. 55 at 8-9. Rather, it disputes only that there exists "any conceivable causal link between the protected activity and the adverse employment actions." D. 55 at 9. The Court agrees with Ann Taylor that there is no genuine issue of material fact and that the record fails to establish the requisite causal link.

As a threshold matter, the Court notes that not only are the overwhelming majority of Dukanci's statements of fact, D. 58 at 4-14, unsupported by any reference to the record, but Dukanci's pleadings contain largely conclusory allegations of retaliation and, thus, are insufficient for purposes of meeting her summary judgment burden. See O'Brien v. Town of Agawam, 440 F. Supp. 2d 3, n.1 (D. Mass. 2006) (recognizing that at the summary judgment stage, the "[t]he court will disregard any [] conclusory statements, as well as purported statements of 'fact' not properly supported by citations to the record"); see also Aulisio v. Baystate Health Sys., Inc., No. 11-30027-KPN, 2012 WL 3957985, at *5 (D. Mass. Sept. 7, 2012) (recognizing that Local Rule 56 .1 "requires concise statements of material facts, not arguments"). Nevertheless, as Dukanci is proceeding *pro se*, the Court will construe her pleadings liberally. See, e.g., Haines v. Kerner, 404 U.S. 519, 520 (1972); Prou v. United States, 199 F.3d 37, 42 (1st Cir. 1999).

Dukanci alleges that Ann Taylor wrongfully terminated her on June 18, 2012 in response to an MCAD complaint she filed against the company on March 5, 2012. D. 1 at 2; D. 58 at 4, 16; D. 64 at 5. In particular, Dukanci asserts that, after filing the MCAD complaint, Ann Taylor "dramatically increased the corrective actions given to [her] . . . held [her] to different standards, terms, and conditions as compared to her peers . . . [and] created a hostile work environment towards her."[4]  D. 58 at 16. As Ann Taylor argues, however, Dukanci has failed to offer any admissible evidence that establishes "any conceivable causal link between the protected activity . . . and the adverse employment actions . . . ." D. 60 at 9. To the contrary, the record demonstrates that Ann Taylor's treatment towards Dukanci remained consistent both before and after she filed her MCAD complaint.

Ann Taylor documented and addressed performance issues with Dukanci well before Dukanci filed her MCAD complaint. For instance, prior to the MCAD complaint, Dukanci received three negative annual performance assessments, D. 56 ¶¶ 15, 23, 43, was reprimanded for losing her store keys, id. ¶ 21, and had a complaint lodged against her by another employee, id. ¶¶ 29-30. Specifically, in her 2009 and 2010 assessments Dukanci received overall performance ratings of "below expectations," id. ¶¶ 15, 23, and, in her 2011 assessment, she received "does not meet expectations" and "below expectations" for her strategic objectives. Id. ¶ 44. Moreover, Dukanci received consistent warnings that if her performance did not improve, she would face disciplinary action up to and including termination. See, e.g., D. 56 ¶ 24 (noting in her 2010 assessment that "[i]f significant and sustained improvement of [Dukanci's] leadership is not evident, further disciplinary action will follow up to and including .

---

[4] The Court notes that Dukanci brings a single retaliation claim, based on her March 2012 MCAD complaint and not a hostile work environment claim. D. 1; see, e.g., Dukanci Depo., D. 56-1 at 25 (clarifying that Dukanci only alleges one count of retaliation).

. . . separation . . . ."); Id. ¶ 33 (noting in her 2011 mid-year assessment that "[a] lack of immediate, sustained improvement in [Dukanci's] performance will result in her separation from the company"). Thus, although it is true that Dukanci received additional negative performance reviews after she submitted her MCAD complaint, the record demonstrates that these evaluations were not retaliatory as required for her single claim of retaliation, but were simply continued, consistent management reviews.

At the motion hearing, Dukanci seemed to suggest that her alleged complaint of discrimination to Human Resource Director Foote in April 2011 places her retaliation claim in a different light. In her deposition, Dukanci testified that shortly after receiving her 2010 performance assessment she sent an email to Foote, protesting her 2009 and 2010 performance evaluations. Dukanci Depo., D. 56-1 at 22-24. Indeed, the record demonstrates that Dukanci complained to Foote that her assessments were based on the subjective opinions of District Manager Desrosiers, Dukanci's direct supervisor and evaluator. Id. Dukanci further testified in her deposition that she subsequently contacted Foote again, this time by phone, to raise concerns about her belief that she was being discriminated against on account of her religion. Id. at 30-32. Even crediting Dukanci's testimony that she made the later complaint by phone to Foote, however, her retaliation claim nevertheless fails. To begin, there is no evidence that Foote shared the contents of the phone conversation with Dukanci's supervisors at Ann Taylor. Moreover, the substantial time gap between the April 2011 phone call and her June 2012 termination is insufficient to establish a causal connection based on temporal proximity. See Morón-Barradas v. Dep't of Educ. Of the Commonwealth of P.R., 488 F.3d 472, 481 (1st Cir. 2007) (noting that an eight-month time gap between the protected activity and adverse employment is insufficient to establish a causal connection based on temporal proximity).

Further, to the extent Dukanci suggests the alleged complaint to Foote constitutes the protected activity for purposes of establishing her *prima facie* case, her claim fails nonetheless because she still has not shown any causal link. Dukanci's performance issues and Ann Taylor's corrective actions remained consistent both before and after the alleged complaint to Foote, and Dukanci has not proffered any evidence that would reasonably infer a causal connection.

Finally, in her opposition, Dukanci perhaps seeks to argue that a causal connection can be established because of Ann Taylor's knowledge of the March 2012 MCAD complaint, see D. 58 at 15 (arguing that "[n]o doubt, Ann Taylor . . . and Plaintiff [sic] Direct supervisor was [sic] aware of the protected activity that [] Dukanci was involved [sic]"), however, mere "[k]nowledge alone cannot provide the causal link [for a retaliation claim]." Pearson v. Mass. Bay Transp. Auth., 723 F.3d 36, 42 (1st Cir. 2013); see Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991) (noting that "[w]ere the rule otherwise, then a disgruntled employee . . . could effectively inhibit a well-deserved discharge by merely filing, or threatening to file, a discrimination complaint"). To the extent that Dukanci may be attempting to establish causation by relying on the temporal proximity between her March 2012 MCAD complaint and her termination three months later, this is not a sufficient nexus, standing alone, to establish causation. See, e.g., Calero-Cerezo v. United States DOJ, 355 F.3d 6, 25 (1st Cir. 2004) (noting that "[t]hree and four month periods have been held insufficient to establish a connection based on temporal proximity").

In sum, the record shows that Ann Taylor consistently experienced significant performance issues with Dukanci over the course of her employment and that Ann Taylor repeatedly warned Dukanci that she would face disciplinary action, up to and including termination, if her performance did not improve. Dukanci has offered no specific admissible

evidence showing that her March 2012 MCAD complaint was the but for cause of her termination.

> ### 2. *Dukanci Has Failed to Establish that Ann Taylor's Legitimate, Non-retaliatory Reasons for Terminating Her Were Pretextual*

Even assuming that Dukanci had established a *prima facie* case of retaliation, Ann Taylor nonetheless has met its burden by offering a "legitimate, non-retaliatory" reason for her termination. See Alvarado, 687 F.3d at 458 (noting that if the plaintiff establishes a *prima facie* case, the burden then shifts to defendant "to proffer a legitimate, non-retaliatory reason for [its] employment decisions") (citation and internal quotation marks omitted). Ann Taylor has proffered extensive evidence to support its argument that Dukanci was terminated because of her poor performance. D. 56 ¶¶ 14-16, 18, 19-24, 30, 32-33, 38-39, 42-47, 52-61; see Dávila v. Corp. De P.R. Para La Difusión Pública, 498 F.3d 9, 17 (1st Cir. 2007) (noting that it is not the province of the court to second-guess the decision of an employer when an employee is terminated for poor performance reasons). A review of the record reveals specifically that: (1) Dukanci experienced poor performance issues that spanned over the course of three years, both before and after the filing of her MCAD complaint, id. ¶¶ 15-62; (2) she received counseling and warnings from two different supervisors regarding her performance, see e.g., id. ¶¶ 14-16, 43-46; and (3) her subordinates lodged complaints against her, id. ¶ 46. These are legitimate, non-retaliatory reasons for Ann Taylor's decision to terminate Dukanci.

The burden, therefore, shifts back to Dukanci to establish that Ann Taylor's stated reason (i.e., poor performance) is pretextual. Dukanci has failed to do so, offering instead only conclusory, unsupported statements that Ann Taylor's criticisms were pretextual. See, e.g., D. 58 at 11 (arguing that "Anderson's corrective actions were manufactured and pre-textual" and that "[i]f Anderson did not know [] Dukanci filed a claim with MCAD, she would not have made

[] Dukanci's life miserable"). Dukanci fails to point to admissible evidence (or reasonable inferences to draw from same) that Ann Taylor's negative evaluations and, ultimately, its decision to terminate Dukanci was a "sham intended to cover up the employer's true motive." Mesnick, 950 F.2d at 824; Acevedo–Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 140 (1st Cir. 2012) (noting that to defeat summary judgment, "[a plaintiff] must offer some minimally sufficient evidence, direct or indirect, both of pretext and of [the defendants'] discriminatory animus" (emphasis and citation omitted)). In fact, the record reveals the opposite. Ann Taylor has shown that despite the repeated performance warnings given to Dukanci before the filing of her MCAD complaint, she nevertheless continued to underperform. Following her 2011 assessment, Dukanci and Anderson met almost weekly to review Dukanci's performance as a consequence of Dukanci's continued management issues. D. 56 ¶ 45. Notably, these weekly performance reviews began before and continued after Dukanci filed the March MCAD complaint. Id. On each occasion, Anderson informed Dukanci of her performance issues and warned Dukanci that a failure to show improvement would result in disciplinary action up to and including termination. Id. ¶ 47. Quite simply, on this record, Dukanci has failed to show that her employer's stated reasons for termination was pretext for retaliatory conduct.

Accordingly, the Court concludes that even assessing all of the evidence in the light most favorable to Dukanci, she has not proffered specific facts that would enable a reasonable fact-finder to conclude that Ann Taylor retaliated against her for engaging in protected activity.

**VI.     Conclusion**

For the foregoing reasons, the Court ALLOWS Ann Taylor's motion for summary judgment, D. 54. Accordingly, the Court DENIES AS MOOT Ann Taylor's motions to strike, D. 52; D. 63-1.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge
